UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-SB60, acting by and through Situs Holdings, LLC, as Special Servicer under the Pooling and Servicing Agreement dated as of March 1, 2019, <br><br> Plaintiff, <br><br> - against - <br><br> 358 ATLANTIC REALTY LLC; MOBROWNSTONE REALTY LLC; AND MOHAMED B. MOHAMED, <br><br> Defendants. | Civil Action File No. <br> _____ |

## COMPLAINT

Plaintiff Wilmington Trust, National Association ("Trustee"), as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB60 (the "Trust") (Trustee as trustee of the Trust shall be referred to hereafter as "Plaintiff"), acting by and through Situs Holdings, LLC ("Situs"), as Special Servicer under the Pooling and Servicing Agreement dated as of March 1, 2019 (the "PSA"), states its complaint as follows:

### PARTIES, JURISDICTION AND VENUE

1. Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Wilmington, Delaware.

2. Trustee is the duly appointed and presently serving trustee of the Trust created under the PSA.

3. Trustee, not individually, but solely in its capacity as trustee for the Trust under the PSA, acting by and through the Special Servicer, brings this action with express reference to the

Loan (defined below) and the matters related thereto as hereinafter set forth. Based upon the Delaware citizenship of Trustee, Plaintiff is a citizen of Delaware.

4. Upon information and belief, defendants 358 Atlantic Realty LLC ("358 Atlantic") and Mobrownstone Realty LLC ("Mobrownstone" and, together with 358 Atlantic, "Borrowers") are New York limited liability companies with a principal place of business at 78 Hoyt Street, Brooklyn, New York 11201. Borrowers are the owners of certain real property and improvements commonly known as 358-360 Atlantic Avenue, Brooklyn, New York 11217, and more particularly described in Exhibit 1 annexed hereto (the "Property").

5. Upon information and belief, defendant Mohamed B. Mohamed ("Mohamed" or "Guarantor"), is a citizen of the State of New York, County of Kings with a residence and/or actual place of business at 78 Hoyt Street, Brooklyn, New York 11201. Upon information and belief, Guarantor also maintains a dwelling at 358 Atlantic Avenue, 2nd Floor, Brooklyn New York 11217.

6. As 358 Atlantic and Mobrownstone are limited liability companies, their citizenship is determined by that of their members. Upon information and belief, Guarantor is the sole member of both 358 Atlantic and Mobrownstone. Based on the New York citizenship of their member, 358 Atlantic and Mobrownstone are citizens of New York.

7. Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is between citizenship of different states and, as described in paragraphs 11 through 14, infra, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Pursuant to the Loan Agreement and Mortgage (as both terms are respectively defined in paragraphs 11 and 13, infra), the state and federal courts located in the City of New York, County of Kings, are the exclusive venues of disputes under the contract. Specifically Section 10.02(a) of the Loan Agreement states that it "and any Loan Document which does not

2

itself expressly identify the law that applies to it, will be governed by the laws of the Property Jurisdiction." Further, Section 10.02(b) of the Loan Agreement provides, in relevant part:

> Borrower agrees that any controversy arising under or in relation to the Note, the Security Instrument, this Loan Agreement or any other Loan Document may be litigated in the Property Jurisdiction. The state and federal courts and authorities with jurisdiction in the Property Jurisdiction will have jurisdiction over all controversies that may arise under or in relation to the Note, any security for the Indebtedness or any other Loan Document. Borrower irrevocably consents to service, jurisdiction and venue of such courts for any such litigation[.]

9. Section 1 of the Mortgage defines the term "Property Jurisdiction" as "the jurisdiction in which the Land is located." Exhibit A of the Mortgage describes the Land, which comprises the Property and is located in the jurisdiction of Kings County, New York.

10. Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3).

## FIRST COUNT
### (Breach of Contract on the Loan Agreement)

**A.  The Loan.**

11. By Loan Agreement dated as of December 12, 2018 (the "Loan Agreement"), Greystone Servicing Corporation, Inc., a Georgia corporation ("Original Lender"), Plaintiff's predecessor-in-interest, agreed to make a loan to Borrowers in the original principal amount of $3,835,000.00 (the "Loan"). A true and correct copy of the Loan Agreement is annexed hereto as Exhibit 2 and incorporated fully herein by reference.

12. As evidence of the Loan, Borrowers, inter alia, executed and delivered to Original Lender a New York Consolidated, Amended and Restated Note, dated as of December 12, 2018, in the original principal amount of $3,835,000.00 (the "Note"). The Note bears a special indorsement from Original Lender to Federal Home Loan Mortgage Corporation ("FHLMC" or

"Freddie Mac"). A true and correct copy of the Note, with the subsequent allonge affixed to the Note, is annexed hereto as Exhibit 3 and incorporated fully herein by reference.

13. As collateral security for the payment of the Note, Borrowers executed, acknowledged and delivered to Original Lender a Consolidation, Extension and Modification Agreement dated as of December 12, 2018 (the "CEMA"), pursuant to which Borrowers, inter alia, agreed to amend, restate and consolidate the Existing Mortgages (as defined in Schedule B of the CEMA) into a single first priority lien on the Property in the original principal amount of $3,835,000.00. Schedule C of the CEMA is a Multifamily Mortgage, Assignment of Rents and Security Agreement dated as of December 12, 2018 (the "Mortgage"), executed by Borrowers in favor of Original Lender and which granted Original Lender a security interest in the Property in the original principal amount of $3,835,000.00. A true and correct copy of the CEMA, including the Mortgage, is annexed hereto as Exhibit 4 and incorporated fully herein by reference.

14. The Mortgage also includes a security interest in favor of the holder of the Mortgage in, inter alia, the buildings, structures, fixtures and other improvements now or hereafter located on the Property as well as the Property (as defined in the Mortgage), including, but not limited to, the Improvements (as defined in the Mortgage), the Fixtures and Personal Property (as defined in the Mortgage), the Leases and Rents (as defined in the Mortgage), and the Intangibles (as defined in the Mortgage (collectively, the "Collateral").

15. The Mortgage also includes an Assignment of Leases and Rents pursuant to which Borrower, inter alia, granted to Original Lender a security interest in all Leases and Rents (as defined in the Mortgage) generated by the Property.

16. To perfect its interest in the Collateral, on February 7, 2019, Original Lender recorded a Uniform Commercial Code Financing Statement with the New York Secretary of State ("NY SOS") as Filing Number 201902070054711 (the "State UCC-1"). The State UCC-1 names

Original Lender and Freddie Mac as the secured parties and 358 Atlantic and Mobrownstone as the Debtors.

17. To further perfect its interest in the Collateral, on January 2, 2019, Original Lender recorded a Uniform Commercial Code Financing Statement with the City Register's Office as CRFN 2019000001530 (the "County UCC-1"). The County UCC-1 names Original Lender and Freddie Mac as the secured parties and 358 Atlantic and Mobrownstone as the Debtors.

18. In order to induce Original Lender to give the Loan and to further secure its repayment, Guarantor executed a Guaranty dated as of December 12, 2018 (the "Guaranty"), wherein and whereby Guarantor irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations (as defined in the Guaranty) (The Loan Agreement, the Note, the CEMA, Mortgage, the County UCC-1, the State UCC-1, the Guaranty and all related loan documents shall be referred to collectively herein as the "Loan Documents").[1] A true and correct copy of the Guaranty is annexed hereto as <u>Exhibit 5</u> and incorporated fully herein by reference.

B. **<u>Assignment of the Loan Documents to Plaintiff.</u>**

19. Original Lender executed and delivered an Assignment of Consolidated Security Instruments, dated as of December 12, 2018 (the "First Assignment"), pursuant to which Original Lender transferred to Freddie Mac all rights, title and interest in and to the CEMA and Mortgage and Freddie Mac became the holder of the CEMA and Mortgage. On January 2, 2019, the First Assignment was recorded in the City Register's Office as CRFN 2019000001529. A true and correct copy of the First Assignment is annexed hereto as part of <u>Exhibit 6</u> and incorporated fully herein by reference.

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

20. Freddie Mac executed an allonge to the Note, dated as of March 22, 2019, indorsed in favor of Plaintiff (the "Allonge") and delivered the Note, with the Allonge affixed thereto, to Plaintiff. See Ex. 3. By virtue of this delivery, Freddie Mac transferred to Plaintiff all of its rights, title and interest in and to the Note and Plaintiff became the holder of the Note.

21. Freddie Mac also executed and delivered an Assignment of Mortgage, dated as of March 6, 2019 (the "Second Assignment"), pursuant to which Freddie Mac transferred to Plaintiff all rights, title and interest in and to the CEMA and Mortgage and Plaintiff became the holder of the CEMA and Mortgage. On May 1, 2019, the Second Assignment was recorded in the City Register's Office as CRFN 2019000139712. A true and correct copy of the Second Assignment is annexed hereto as part of Exhibit 7 and incorporated fully herein by reference.

22. By Uniform Commercial Code Financing Statement Amendment filed with the NY SOS on May 25, 2019 as Filing Number 201905258241784, Freddie Mac assigned the State UCC-1 to Plaintiff.

23. By Uniform Commercial Code Financing Statement Amendment filed with the City Register's Office on April 18, 2019, as CRFN 2019000124115, Freddie Mac assigned the County UCC-1 to Plaintiff.

**C.  Borrowers' Defaults Under the Loan Documents.**

24. Section 8.01 of the Loan Agreement sets forth the events that shall constitute an Event of Default, including, inter alia, "Borrower fails to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document." See Exhibit 2.

25. Per Section 7.1 of the Loan Agreement, multiple Events of Default have occurred under the Loan Documents resulting from, inter alia and described in further detail below: (i) Borrowers' failure to remit the Monthly Debt Service Payment Amount (as defined in the Loan

Agreement) on the April 2020 Payment Date and each Payment Date (as defined in the Loan Agreement) thereafter (the "Payment Default")

26. As defined in Section 1.1.1 of the Loan Agreement, the Loan was scheduled to reach maturity on August 6, 2028 (the "Maturity Date"). Section 2.2.2 sets forth Borrowers' obligation to make payments on their Loan prior to the Maturity Date; specifically, Borrowers were to pay the Monthly Debt Service Payment Amount, defined in Section 1.1.2 of the Loan Agreement as "a constant monthly payment amount of $21,976.44," on each Payment Date, defined in Section 1.1.2 of the Loan Agreement as "the sixth (6th) day of each calendar month prior to the Maturity Date."

27. Section 8.01(a) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "Borrower fails to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document."

28. By notice dated November 9, 2020 (the "Notice of Default"), Plaintiff, through counsel, notified Borrowers of, inter alia, Borrowers' failure to remit the payments due on the September, October and November 2020 Payment Dates (the "Payment Default") and demanded that Borrowers cure the Payment Default.

29. In the Notice of Default, Plaintiff, through counsel, also notified Borrowers that, inter alia, pursuant to Section 3(b)(iii) of the Mortgage, their revocable license to collect the Rents granted under the Loan Documents (the "License") was immediately and automatically revoked as of the first date of occurrence of the Payment Default. Plaintiff demanded that all Rents collected by Borrower, or on behalf of Borrower, since the first Payment Default, including all Rents collected after the date of the Notice of Default, be delivered to Lender pursuant to the terms of the Loan Documents.

30. By notice dated December 22, 2020 (the "Notice of Acceleration"), Plaintiff, through counsel, notified Borrowers of, inter alia, Borrowers' continued failure to cure the Payment Default as well as additional Events of Default that had occurred and are continuing subsequent to the mailing of the Notice of Default, to wit: (i) Borrowers' failure to remit the payment due on the December 2020 Payment Date, and (ii) Borrowers' failure to remit any of the Rents demanded in the Default Notice ((i) and (ii), collectively with the Payment Defaults, the "Default"). Plaintiff further notified Borrowers in the Notice of Acceleration that the Loan was now accelerated and fully due and owing in accordance with the terms of the Loan Documents and demand was made for Borrowers to pay the entire outstanding amount due and owing on the Loan.

31. Accordingly, as of September 1, 2020, an Event of Default has occurred and is continuing under the Loan Documents as a result of, inter alia, Borrowers' continued failure to remit the payments due on the September 2020 Payment Date and each monthly Payment Date thereafter.

32. Despite receipt of the Notice of Default and Notice of Acceleration, Borrowers have failed to cure the Default and satisfy their obligations under the Loan Documents.

33. There is now due, owing and payable to Plaintiff under the Loan Documents: (i) approximately $3,737,247.68 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) escrow advances for, inter alia, taxes and insurance; (v) attorneys' fees, costs and expenses; (vi) the Prepayment Charge; and (vii) all other sums provided for under the Loan Documents, including all Rents collected since September 1, 2020, in an amount to be determined.

34. In order to protect the lien and security represented by the Mortgage during the pendency of this action, Plaintiff may be compelled to further pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges

affecting the Property. Plaintiff asks that any amount so paid and expended by it prior to and during the pendency of this action be added, pursuant to the Loan Documents, to its claim and, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Loan Documents.

35. No other action or proceeding has been brought to recover any part of the Debt herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Fixing the amount due to Plaintiff pursuant to the Loan Documents;

B. Directing that Plaintiff be paid the amounts due pursuant to the Loan Documents, with interest, advances, other charges, attorneys' fees and costs;

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

D. Granting such other relief as is equitable and just.

## SECOND COUNT
**(Appointment of a Receiver)**

36. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 35 above, as if the same were set forth and repeated at length herein.

37. The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Property (collectively, the "Borrowers' Assets") are the sole assets of Borrowers.

38. Except for certain limited qualifications as set forth in the Loan Documents, Borrowers have no personal liability for repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the collateral securing the Loan.

39. The Loan Documents expressly allow Plaintiff to seek, and indicate Borrowers' express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

40. Borrowers and their agents are still in possession of Borrowers' Assets.

41. Plaintiff intends to foreclose on the Property as soon as it is legally allowed to do so. However, as a result of several executive orders issued by New York Governor Andrew Cuomo during and as a result of the still ongoing COVID-19 pandemic, there is currently a moratorium on commercial mortgage foreclosures in place throughout the State of New York. Specifically, Executive Order 202.81, issued on December 11, 2020, continued the commercial mortgage foreclosure moratorium directed in previous Executive Orders through January 31, 2021, with the possibility of the moratorium being continued through subsequent Executive Orders.

42. Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrowers' Assets suffering continuous waste and a dissipation or diminution in value, if Borrowers remain in control of Borrowers' Assets. Plaintiff's potential to suffer material losses and injuries is further exacerbated by Plaintiff's inability to foreclose on the Property due to the ongoing COVID-19 pandemic and the aforementioned current and potential future Executive Orders.

43. Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Property and Borrowers' Assets.

44. No other action or proceeding has been brought to appoint a receiver for Borrowers' Assets.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Appointing a receiver of the Property and Borrowers' Assets;

B. Directing all tenants in possession of the Properties to pay the appointed receiver all rent, income and profits;

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

D. Granting such other relief as is equitable and just.

## THIRD COUNT
### (Breach of Contract of the Guaranty)

45. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 44 above, as if the same were set forth and repeated at length herein.

46. In order to induce Original Lender to make the Loan to Borrowers, Guarantor executed, acknowledged and delivered to Original Lender the Guaranty.

47. Pursuant to the terms of the Guaranty, Guarantor irrevocably and unconditionally covenants and agrees that he is liable for the Guarantor's Obligations (as defined therein), and that Guarantor shall fully perform each and every term and provision thereof.

48. Moreover, Guarantor agreed that, with or without notice or demand, Guarantor will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrowers, for all expenses (including reasonable attorney's fees) incurred by Plaintiff in connection with the collection of the Guarantor's Obligations or any portion thereof or with the enforcement of the Guaranty.

49. Plaintiff is the current holder of the Note, the Mortgage and the Guaranty.

50. No other action or proceeding has been brought to recover any part of the Guarantor's Obligations herein described.

**WHEREFORE**, Plaintiff demands judgment against Guarantor as follows:

A. Fixing the amount due to Plaintiff from Guarantor pursuant to the Guaranty and any other applicable Loan Documents;

B. Adjudging that Plaintiff is entitled to be paid by Guarantor the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs; and

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

  D. Granting such other relief as is equitable and just.

Dated: New York, New York
   January 11, 2021

           **KILPATRICK TOWNSEND & STOCKTON LLP**

           By: */s/ David M. Posner*
            David M. Posner, Esq. (DP6505)
            Richard J. Galati, Jr., Esq. (RG0884)
            Attorneys for Plaintiff
             *CSAIL 2018-CX12 Route 9 Poughkeepsie Hotel LLC*
            The Grace Building
            1114 Avenue of the Americas
            New York, New York  10036
            (212) 775-8700
            dposner@kilpatricktownsend.com
            rgalati@kilpatricktownsend.com