UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| 358 & 360 ATLANTIC AVENUE HOLDINGS, LLC, | **REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| -against- | 21-CV-168 (DG)(PK) |
| 358 ATLANTIC REALTY LLC; MOBROWNSTONE REALTY LLC; MOHAMED B. MOHAMED; NEW YORK CITY DEPARTMENT OF FINANCE; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; and "JOHN DOE NO. 1" TO "JOHN DOE NO. 100" inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, | |
| Defendants. | |

---

**Peggy Kuo, United States Magistrate Judge:**

358 & 360 Atlantic Avenue Holdings, LLC ("Plaintiff") filed an action against 358 Atlantic Realty LLC, Mobrownstone Realty LLC, Mohamed B. Mohamed, New York City Department of Finance, New York State Department of Taxation and Finance, and New York City Environmental Control Board (collectively "Defendants")[1] to, *inter alia*, foreclose a mortgage encumbering property located at 358-360 Atlantic Avenue in Brooklyn ("the Property"). (Amended Complaint ("Am. Compl."), Dkt. 17.)

---

[1] Additionally, Plaintiff named "John Doe No. 1 to John Doe No. 100" as Defendants "to designate any and all tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the Property." (Amended Complaint ("Am. Compl.") ¶ 11, Dkt. 17.) There is no indication that Defendants "John Doe No. 1 to John Doe No. 100" were identified or served; thus, I respectfully recommend that they be dismissed from this case. *See* Fed. R. Civ. P. 4(m).

Before me on referral from the Honorable Diane Gujarati is Plaintiff's Motion for Default Judgment ("Motion"). (*See* Motion for Default Judgment ("Mot."), Dkt. 33; Order dated Mar. 28, 2022.) For the reasons stated herein, I respectfully recommend that the Motion be granted in part.

## FACTUAL BACKGROUND

### I. Agreements Between the Parties

Pursuant to a Loan Agreement dated December 12, 2018, Greystone Servicing Corporation, Inc. ("Greystone"), the original lender, made a loan to Defendants 358 Atlantic Realty LLC and Mobrownstone Realty LLC ("Borrowers") in the amount of $3,835,000.00. (Am. Compl. ¶ 17; "Loan Agreement" at 2 (ECF pagination), Ex. 2 to Am. Compl., Dkt. 17-2.) Borrowers executed and delivered a New York Consolidated, Amended and Restated Note ("the Note") in the same amount. (Am. Compl. ¶ 18; "Note" at 1, Ex. 3 to Am. Compl., Dkt. 17-3.)

As security for payment of the Note, Borrowers executed a Consolidation, Extension and Modification Agreement ("CEMA") in which they agreed that the rights and obligations under any existing mortgages on the Property would be consolidated "into a single first priority lien on the Property in the original principal amount of $3,835,000.00." (Am. Compl. ¶ 19; *see* "CEMA" at 5-6 (ECF pagination), Ex. 4 to Am. Compl., Dkt. 17-4.) The CEMA consolidated any obligations that existed under the notes secured by the preexisting mortgages. (CEMA at 5 (ECF pagination).)

Borrowers also executed a consolidated mortgage ("the Mortgage") granting Greystone a security interest in the Property, which Borrowers owned, in the amount of $3,835,000.00 and also a security interest in all rents generated by the Property, and in "all products and cash and non-cash proceeds" of the Property (the "Collateral"). (*See* Am. Compl. ¶¶ 5, 19, 21; "Mortgage" at 1, §§ 2(a), 3, Ex. C to CEMA, Dkt. 17-4; Loan Agreement § 2.01.) Greystone recorded its security interests with the New York State Secretary of State (*see* Ex. 13 to Am. Compl., Dkt. 17-13) and the New York City Register's Office (*see* Ex. 14 to Am. Compl., Dkt. 17-14). A document titled "Description of

2

Collateral," attached to the Amended Complaint ("Description of Collateral," Ex. 5 to Am. Compl., Dkt. 17-5), contains definitions that are consistent with Greystone's UCC financing statements. "Collateral" is defined to include all fixtures, personalty, proceeds paid by an insurer of the Property, leases, and rents. (*See* Description of Collateral; Ex. B to Ex. 13 to Am. Compl. at 6 (ECF pagination); Ex. B to Ex. 14 to Am. Compl. at 8 (ECF pagination).)

Defendant Mohamed signed a Guaranty, in which he "absolutely, unconditionally, and irrevocably" guaranteed the Mortgage, promising, *inter alia*, "full and prompt payment when due . . . of all amounts for which Borrower is personally liable under . . . the Loan Agreement" and "[a]ll costs and expenses, including reasonable Attorneys' Fees and Costs, incurred by Lender in enforcing its rights under this Guaranty." (Am. Compl. ¶ 22; Guaranty §§ 3(a)(i), (iv), Ex. 6 to Am. Compl., Dkt. 17-6.) The Loan Agreement, Note, CEMA, Mortgage, and Guaranty are referred to collectively as the "Loan Documents."

On December 12, 2018, Greystone transferred all rights, titles, and interest in the CEMA and Mortgage to Freddie Mac. (Am. Compl. ¶ 23; *see* "First Assignment," Ex. 7 to Am. Compl., Dkt. 17-7.) In March 2019, Freddie Mac executed an allonge to the Note in favor of Interim Holder and transferred all rights, title and interest in and to the Loan Documents to Interim Holder.[2] (Am. Compl. ¶¶ 24-25; *see* "Second Assignment," Ex. 8 to Am. Compl., Dkt. 17-8.) On August 13, 2021, Interim Holder transferred the Loan Documents to Plaintiff, which became the owner and holder of the Loan Documents. (Am. Compl. ¶¶ 26-27; "Third Assignment," Ex. 9 to Am. Compl., Dkt. 17-9.) All three assignments were recorded in the City Register's Office. (*See* Am. Compl. ¶¶ 23, 25, 27; First Assignment; Second Assignment; Third Assignment.) Each holder of the Loan Documents also registered its security interests with the New York State Secretary of State (*see* Exs. 15 & 17 to Am.

---

[2] "Interim Holder" is Wilmington Trust, National Association (the sole member of Plaintiff), "as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB60." (Am. Compl. ¶ 2.)

3

Compl., Dkts. 17-15 & 17-17) and the New York City Register's Office (*see* Exs. 16 & 18 to Am. Compl., Dkts. 17-16 & 17-18).

## II. Requirements Under the Loan Documents

The Loan Documents provide that on the first of the month for 84 months starting February 1, 2019, Borrowers must pay a fixed amount of principal and interest to Plaintiff as the current owner and holder of the note secured by the Mortgage on the Property. (*See* Am. Compl. ¶¶ 26-27, 35; Note at 2, § 3; "Allonge to Note" at 20 (ECF pagination), Dkt. 17-3.) Failure to do so constitutes a default. (Am. Compl. ¶¶ 28-29; *see, e.g.*, Note § 5(c); Loan Agreement Art. VIII.) In the event of a default, the entire indebtedness, which includes the entire unpaid principal amount, any accrued interest or prepayment charges, and any other amounts payable under the Loan Documents, may be declared immediately due. (Am. Compl. ¶ 30; Note § 5(e); Mortgage § 31(a).) Plaintiff would also be entitled to collect rents generated by the Property, appoint a receiver, and collect legal expenses, costs and fees. (*See* Mortgage §§ 3(b)(iii), (c)(i),(ii), 7(a), 31(a),(c); Note § 9; Am. Compl. ¶ 32.) The interest rate under the Note would increase to the Fixed Annual Interest Rate[3] or the Variable Annual Interest Rate,[4] plus 4%. (Note § 5(b); Am. Compl. ¶ 31.)

Beginning on September 1, 2020, Borrowers stopped making the required monthly loan payments. (Am. Compl. ¶ 36.) By letter dated November 9, 2020 (the "Default Notice"), Interim Holder notified Borrowers that they were in default for having failed to make payments due in September, October, and November 2020 and demanded that Borrowers immediately cure the default by paying all amounts due. ("Default Notice" at 3 (ECF pagination), Ex. 10 to Am. Compl., Dkt. 17-10.) Defendant Mohamed, as the Guarantor, was also mailed a copy of the Default Notice via overnight delivery. (*Id.* at 4 (ECF pagination).) Interim Holder informed Borrowers that as a result

---

[3] As of November 9, 2021, the Fixed Annual Interest Rate was 4.370%. (Am. Compl. ¶ 31; *see* Note at 2.)

[4] Interest accrues at the Variable Annual Interest Rate on or after January 1, 2026. (Note at 2, § 2(a)(ii).)

4

of their default, Borrowers' license to collect rents from the Property was revoked, and Borrowers were required to give Interim Holder all rents collected since September 1, 2020. (*Id.* at 3 (ECF pagination).) Borrowers failed to make any of the required payments or remit rents. (*See* "Notice of Acceleration" at 3 (ECF pagination), Ex. 11 to Am. Compl., Dkt. 17-11.)

On December 23, 2020, a Notice of Acceleration was sent to Borrowers reminding them of their obligations and noting that additional events of default had occurred: Borrowers failed to make monthly payments due on December 1, 2020 and failed to remit rents after having been informed that their license to collect rents was revoked. (*Id.*) Interim Holder informed Borrowers that it was accelerating the loan, making the entire debt immediately due. (*Id.*) Mohamed was also mailed a copy of the Notice of Acceleration via overnight delivery. (*Id.* at 5.)

Borrowers failed to cure any of the events of default. On May 4, 2021, Interim Holder sent Borrowers and Mohamed a notice demanding full payment of the debt. ("May 2021 Notice" at 3, 5 (ECF pagination), Ex. 12 to Am. Compl., Dkt. 17-12.) Also included in the notice was a hardship declaration required by the COVID-19 Emergency Protect Our Small Businesses Act of 2021.[5] (*See id.* at 4, 6 (ECF pagination); Am. Compl. ¶ 42.)

As of March 25, 2022 when the Motion was filed, Borrowers had not responded to either the Default Notice or Notice of Acceleration or cured the payment default. (*See* Am. Compl. ¶ 44; Declaration of Giovanna Cavagnaro in Support of Plaintiff's Mot. ("Cavagnaro Decl.") ¶ 30, Dkt. 33-1.) Mohamed has also failed to respond or make the required payments as Guarantor. (Cavagnaro Decl. ¶ 30.) According to Plaintiff, as of March 15, 2022, approximately $3,737,247.68 in principal was due and owing under the Loan Documents, as well as unpaid interest, late charges, escrow

---

[5] Mortgagors were provided with a blank hardship declaration to sign and deliver to their mortgage lender if they had "lost significant revenue or had significantly increased necessary costs during the COVID-19 pandemic." (May 2021 Notice at 6 (ECF pagination).) If a mortgagor signed and returned the declaration, the mortgage lender could not foreclosure on the mortgage until at least May 1, 2021. (*Id.*) There is no evidence that Borrowers signed and delivered the hardship declaration. (*See* Am. Compl. ¶ 42.)

advances for taxes and insurance, attorneys' fees and costs, the prepayment charge, and rents collected. (*Id.* ¶ 35; Am. Compl. ¶ 45.)

## PROCEDURAL BACKGROUND

Plaintiff initiated this mortgage foreclosure action on January 12, 2021 (Compl., Dkt. 1) and filed the Amended Complaint on November 9, 2021. (Am. Compl.) In addition to Borrowers and Mohamed, Plaintiff named New York City Department of Finance, New York State Department of Taxation and Finance, and New York City Environmental Control Board ("ECB") as Defendants based on the possible existence of liens, judgments, encumbrances, or other filings against the Property. (Am. Compl. ¶¶ 8-10.)

Plaintiff served each Defendant with the Amended Complaint within 90 days of filing it. (*See* Dkts. 20-25.)[6] Defendants failed to answer or otherwise defend. The Clerk of Court issued Certificates of Default against Defendants on February 16, 2022. (*See* Dkts. 30, 31.)

Plaintiff filed the Motion on March 25, 2022, seeking default judgment against Defendants 358 Atlantic Realty LLC, Mobrownstone Realty LLC, Mohamed, and ECB ("Defaulting Defendants") on the first three claims of the Amended Complaint: Count One (mortgage foreclosure), Count Two (security interest foreclosure), and Count Three (possession).[7] (*See* Mem. of Law at 1-2.) Additionally, Plaintiff requests that the Court refer the calculation of the amount of the judgment of foreclosure and sale to the undersigned. (*Id.* at 2.)

---

[6] Defendants 358 Atlantic Realty LLC, Mobrownstone Realty LLC, New York City Department of Finance, New York State Department of Taxation and Finance, and ECB were served on December 9, 2021. (*See* Dkts. 20-24.) After multiple attempts to reach Mohamed or an authorized representative in person, a process server affixed the above-mentioned documents to the door of Mohamed's residence on January 13, 2022 and mailed a copy via First Class mail to his residence. (*See* Dkt. 25.)

[7] Count Four of the Amended Complaint sought the appointment of a receiver, which the Court granted on April 12, 2021. (Apr. 12, 2021 Order, Dkt. 14; Am. Compl. ¶¶ 64-71.) Count Five seeks judgment against Mohamed in the event that the property is sold at auction and there is a deficiency in the amount owed to Plaintiff. (Am. Compl. ¶¶ 72-78.) Plaintiff states that relief on this count is premature. (*See* "Mem. of Law" at 1 n.2, Dt. 33-31.)

The Motion includes a copy of the Complaint (Dkt. 33-18); Amended Complaint (Dkt. 33-22); proof of service of the Complaint and Amended Complaint on each Defaulting Defendant (Dkts. 33-19, 33-20, 33-23, 33-24, 33-25); a Notice of Motion (Dkt. 33); Declarations in Support (Dkts. 33-1, 33-17); Memorandum of Law (Dkt. 33-31); and a Proposed Order (Dkt. 33-32). Plaintiff served the Motion on each Defaulting Defendant by Federal Express overnight delivery. (*See* Dkt. 33-33.)

## DISCUSSION

### I.   Legal Standard for Default Judgment

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Id.* (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). Then, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Failure to answer may constitute a default, as may failure to defend at later stages of litigation. *See* Fed. R. Civ. P. 55(a). Here, Defendants did not file an answer to the Complaint or Amended Complaint.

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017). A court must draw all reasonable inferences in favor of the moving party. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 133; (2) the plaintiff took all required

procedural steps in moving for default judgment, *see* E.D.N.Y. Loc. Civ. R. 55.2; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84.

A court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default and the amount of damages are clearly established. *See Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *GuideOne*, 696 F. Supp. 2d at 208. The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

## II. Jurisdictional and Procedural Requirements

A court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Before entering a default judgment, a court may, but need not, inquire as to whether it has personal jurisdiction over a defaulting defendant. *See id.* at 133 (citing *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)).

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, the federal diversity statute. The matter in controversy exceeds $75,000. (Am. Compl. ¶¶ 12, 17); *see* 28 U.S.C. § 1332(a)(1). Plaintiff has also met the burden of establishing diversity of citizenship as to all Defaulting Defendants. Plaintiff is a citizen of Delaware because its sole member, Wilmington Trust, National Association, has its main office in Delaware and is therefore a citizen of Delaware. (Am. Compl. ¶¶ 2-3); *see Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (noting that the citizenship of a limited liability company is the citizenship of each of its members); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding "that a national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located."). Defendants 358 Atlantic Realty LLC and Mobrownstone Realty LLC are citizens of New York

because the sole member of each is Defendant Mohamed, who is a citizen of New York. (*See* Am. Compl. ¶¶ 5-7.) ECB is an entity that cannot be sued; the City of New York is the proper party. *See* N.Y.C. Admin Code & Charter Ch. 16 § 396 ("All actions . . . shall be brought in the name of the city of New York and not in that of any agency . . . ."); *see, e.g.*, *Windward Bora LLC v. Thomas*, No. 20-CV-5320 (DG)(MMH), 2022 WL 14731628, at *4 (E.D.N.Y. Sept. 30, 2022); *Alleva v. N.Y. City Dep't of Investigation*, 696 F. Supp. 2d 273, 276 n.2 (E.D.N.Y. 2010), *aff'd*, 413 F. App'x 361 (2d Cir. 2011).

The Court's exercise of personal jurisdiction over Defaulting Defendants is appropriate.

As stated *supra*, Defaulting Defendants are citizens of New York. Plaintiff properly served 358 Atlantic Realty LLC and Mobrownstone Realty LLC through the New York Secretary of State. (Dkts. 20, 21); *see* N.Y. Bus. Corp. Law § 306(b)(1); N.Y. C.P.L.R. 311-a(a). ECB was properly served through the New York City Corporation Counsel's office, located at 100 Church Street. (Dkt. 24); *see* N.Y. C.P.L.R. 311(a)(2). Mohamed was properly served through CPLR's "nail and mail" service. (Dkt. 25); *see* N.Y. C.P.L.R. 308(4), 312-a(a).

Additionally, Plaintiff has demonstrated that it has taken the required procedural steps and submitted all the correct papers necessary for its Motion. *See* E.D.N.Y. Loc. Civ. R. 7.1 (requiring that motion include notice of motion, memorandum of law, and supporting affidavits if necessary); 55.2(b) (requiring that party seeking judgment of default append certificate of default, copy of the claim, and proposed form of default judgment to its motion); 55.1(b) (requiring that party seeking entry of default submit an affidavit showing that party against whom it seeks judgment "is not an infant, in the military, or an incompetent person"; "failed to plead or otherwise defend"; and that the pleading was properly served). Plaintiff submitted a notice of motion (Dkt. 33), memorandum of law (Dkt. 33-31), and all relevant exhibits necessary for its Motion. (*See* Exs. 1-14 to Cavagnaro Decl., Dkts. 33-2 through 33-15; Exs. 1-13 to Declaration of Richard J. Galati, Jr. ("Galati Decl."), Dkts. 33-18 through 33-30). In addition, Plaintiff attached the Clerk's certificates of default (Ex. 9 to Galati

Decl., Dkt. 33-26), copies of the Complaint and Amended Complaint (Ex. 1 to Galati Decl., Dkt. 33-18; Ex. 5 to Galati Decl., Dkt. 33-22), and a proposed order (Dkt. 33-32). In its motion for an entry of default, Plaintiff included a declaration asserting that no defendant was an infant, incompetent person, or in the military. (*See* Dkt. 26-1 ¶ 12); *see* Fed. R. Civ. P. 55(b)(2). Pursuant to Local Rule 55.2(c), Plaintiff also submitted proof of mailing of the Motion to each Defaulting Defendant. (Dkt. 33-33.)

### III.  Liability

A defendant who defaults admits all "well-pleaded" factual allegations in the Complaint, except those relating to damages. *Greyhound Exhibitgroup*, 973 F.2d at 158; *Windward Bora LLC v. Qazi*, No. 18-CV-6912 (DRH)(ARL), 2019 WL 2374847, at *2 (E.D.N.Y. May 16, 2019) [hereinafter *Qazi*]. When determining liability, the Court accepts as true all well-pleaded allegations in the Complaint, drawing all reasonable inferences in favor of Plaintiff. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *see Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup*, 973 F.2d at 158-59. The Court may conduct hearings if it needs to "establish the truth of any allegations by evidence" or "investigate any other matter." Fed. R. Civ. P. 55(b)(2). Even if the alleged facts are deemed admitted, they must nevertheless constitute legitimate causes of action. *See Mickalis*, 645 F.3d at 137 ("[A] district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment. (alteration omitted) (quoting *Finkel*, 577 F.3d at 84)).

#### A. *Defendants 358 Atlantic Realty LLC, Mobrownstone Realty LLC, and Mohamed B. Mohamed*

##### 1. Count I: Mortgage Foreclosure

"To establish a prima facie case of mortgage foreclosure in New York, a plaintiff must show (1) a mortgage; (2) an unpaid note; and (3) proof of default." *1077 Madison St., LLC v. Smith*, 670 F. App'x 745, 746 (2d Cir. 2016) (citation to summary order). If the plaintiff did not originate the loan, it is required to prove its valid and current ownership of the instruments. *Miss Jones LLC v. McCormick*,

10

No. 16-CV-7129 (WFK)(RER), 2017 WL 4877437, at *2 (E.D.N.Y. Aug. 9, 2017), *R&R adopted*, 2017 WL 4898278 (E.D.N.Y Oct. 27, 2017). "[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case . . . , it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Qazi*, 2019 WL 2374847, at *2.

Plaintiff submitted both the Mortgage and the unpaid Note with its Motion. (*See* Dkts. 33-4 at 14 (ECF pagination); 33-3.) It also submitted proof of its current ownership of the Loan Documents. (*See* Dkts. 33-2, 33-3 at 20 (ECF pagination), 33-12); *see 1077 Madison*, 670 F. App'x at 746-47.

The Loan Documents delineate the circumstances under which a default will occur and include an acceleration clause, whereby, in the event of a default, Plaintiff may declare the entire unpaid principal of the loan immediately due. (*See* Mortgage § 31(a).) Beginning on September 1, 2020 and continuing to the present, Borrowers failed to remit the monthly principal and interest payments, thereby defaulting on the Loan Documents. They were notified of the default and the debt's acceleration. (*See* Default Notice; Notice of Acceleration.) They were again notified on May 4, 2021 that Borrowers had not cured the default. (*See* May 2021 Notice.)

Plaintiff has, therefore, established its entitlement to mortgage foreclosure against the Borrowers. By failing to appear in this action, Borrowers have not rebutted the case against them.

Mohamed acted as a Guarantor, but was not a Mortgagor. As such, he did not default on the Mortgage and Note. The Guaranty "is appropriately enforced in the foreclosure action when the deficiency judgment is sought following the sale," and by naming Mohamed in this action, Plaintiff has preserved its right to seek a deficiency judgment against Mohamed after the foreclosure sale. *Letchworth Realty, LLC v. LLHC Realty, LLC*, No. 15-CV-06680 (FPG), 2020 WL 5361666, at *3 (W.D.N.Y. Sept. 8, 2020) (quoting *Minin v. 2494 Amsterdam Ave. LLC*, No. 111122/10, 2011 WL 5295204, at *6-7 (N.Y. Sup. Ct. Oct. 27, 2011)) (collecting cases).

Accordingly, I respectfully recommend that a default judgment of mortgage foreclosure be entered against 358 Atlantic Realty LLC and Mobrownstone Realty LLC.

### 2. Count II: Security Interest Foreclosure

Plaintiff requests that a judgment of foreclosure be entered as to its security interests in the Collateral, and that the Collateral be sold with the Property at public sale. (Am. Compl. ¶ 59.)

Under the New York UCC, after a default, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim, [or] security interest . . . by any available judicial procedure." N.Y. U.C.C. § 9-601(a)(1). After a default, "a secured party . . . may take possession of the collateral . . . pursuant to judicial process[] or without judicial process, if it proceeds without breach of the peace." N.Y. U.C.C. §§ 9-609(a)(1), (b)(1)-(2)). "New York U.C.C. § 9-610 authorizes a secured party to dispose of its collateral, including by selling it, upon a default by the debtor." *Rapillo v. CitiMortgage, Inc.*, No. 15-CV-5976 (KAM)(RML), 2018 WL 1175127, at *7 (E.D.N.Y. Mar. 5, 2018); *see* N.Y. U.C.C. § 9-610(a).

Plaintiff has demonstrated a valid and perfected security interest in the Collateral. The Loan Documents granted the original lender an interest in the Collateral (*see* Loan Agreement § 2.01; Mortgage § 2(a)), and Plaintiff has established that it is the current holder of that interest. (*See* Exs. 13-18 to Am. Compl.) The security interest was properly recorded with the New York Secretary of State and the New York City Register's Office.

As discussed above, Borrowers are in default under the Loan Documents. Therefore, "the UCC enables [Plaintiff] to take possession of the Collateral and dispose of it . . . ." *Bank of Am., N.A. v. Vanderbilt Trading USA LLC*, No. 17-CV-7167 (RER), 2019 WL 8807747, at *7 (E.D.N.Y. Sept. 9, 2019).

As with the mortgage foreclosure, the security interest foreclosure applies only to Borrowers, not Mohamed, who is not alleged to have any ownership or other interest in the Property or Collateral.

Accordingly, I respectfully recommend that a judgment of security interest foreclosure be entered against 358 Atlantic Realty LLC and Mobrownstone Realty LLC.

### 3. Count III: Possession

Plaintiff asserts in its third cause of action that by reason of Borrowers' default, Plaintiff is "entitled to possession of the Property and the Collateral [].ˮ (Am. Compl. ¶¶ 61-63.) Plaintiff does not describe the scope or basis for its claim of "possession,ˮ stating only, "Borrowers and Guarantor are now in possession of the Property and Collateral and have deprived, and continue to deprive, Plaintiff of possession of the Property and Collateral.ˮ (*Id.* ¶ 63.) The term "possession,ˮ without more, is ambiguous. *See* Black's Law Dictionary at 1351 (10th ed. 2014) (containing definitions for approximately forty different types of possession). Plaintiff has not cited any authority to support its claim that it is entitled to possession beyond that which was already given to the receiver. At Plaintiff's request, the Court previously permitted a receiver to "take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all othersˮ the Property, among other things. (*See* Apr. 12, 2021 Order.)

Accordingly, I respectfully recommend that Plaintiff's request for default judgment on the claim of possession be denied.

### B. Defendant ECB

Plaintiff seeks default judgment against ECB to terminate its interests in the Property. (*See* Am. Compl. ¶ 10; Mem. of Law at 2.) In all proceedings involving real property, "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiffˮ are necessary defendants. New York Real Property Actions and Proceedings Law ("RPAPLˮ) § 1311(3). Including these parties is important since "the foreclosure action will extinguish the rights of all parties with subordinate interests in the property.ˮ *Miss Jones*, 2017 WL 4877437, at *3.

13

In cases where the City of New York or an administrative board thereof is named as a defendant affecting real property, the complaint must set forth "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." RPAPL § 202-a(1). Thus, for a court to grant a default judgment against any city defendants, a complaint should have more than just "bare allegations" that the city entities were necessary because of possible liens encumbering the property. *E.g.*, *Onewest Bank, N.A. v. Cole*, No. 14-CV-03078 (FB)(RER), 2015 WL 4429014, at *4 (E.D.N.Y. July 17, 2015), *as amended*, 2016 WL 11395013 (E.D.N.Y. Jan. 19, 2016), *R&R adopted sub nom.* 2016 WL 1069951 (E.D.N.Y. Mar. 18, 2016); *Assets Recovery Ctr. Invs., LLC v. Smith*, No. 13 CV-253 (CBA), 2014 WL 3525011, at *12 n.30 (E.D.N.Y. Mar. 12, 2014), *R&R adopted*, 2014 WL 3528460 (E.D.N.Y. July 15, 2014). Additionally, "where . . . the lien exists by virtue of a judgment, the complaint must also provide 'the name of the court, date recorded, clerk's office in which filed, the names of the parties against whom and in whose favor such judgment was recovered and a brief description of the grounds for or the nature of such judgment.'" *Miss Jones, LLC v. Brahmadutta Bisram, Y & S Dev. of N.Y., Inc.*, No. 16-CV-7020 (NGG)(SMG), 2018 WL 2074200, at *4 (E.D.N.Y. Feb. 5, 2018) (quoting RPAPL § 202-a(2)), *R&R adopted sub nom. Miss Jones LLC v. Bisram*, 2018 WL 2074205 (E.D.N.Y. Feb. 22, 2018). "Title-search documents showing amounts owed to city agencies are sufficient to meet a plaintiff's obligations under Section 202-a(1)." *Id.*; *see also Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG)(RML), 2020 WL 1242828, at *6 (E.D.N.Y. Mar. 16, 2020) (finding documents demonstrating property had ECB violations sufficient to satisfy heightened pleading requirement); *CIT Bank, N.A. v. Neris*, No. 18-CV-1511 (VM), 2019 WL 6334894, at *3 (S.D.N.Y. Nov. 1, 2019) (same).

ECB is a judicial tribunal that operates under the laws of the City of New York (Am. Compl. ¶ 10), and Plaintiff is thus required to provide detailed facts showing the nature of its interest. *See* RPAPL § 202-a. Plaintiff has met this heightened requirement by attaching title-search documentation

to the Motion. (*See* Ex. 10 to Galati Decl., Dkt. 33-27.) The documents reflect that the Property has three ECB violations with a total penalty of $1,023.41 owed. (*See id.*; Galati Decl. ¶ 13.)

Accordingly, I respectfully recommend that default judgment against ECB be entered.[8]

### IV.   Judgment of Foreclosure and Calculation of the Judgment

Plaintiff has established its prima facie entitlement to a judgment of foreclosure, and therefore, I respectfully recommend that a judgment of foreclosure and sale of the Property be entered.

Plaintiff requests that the Court "refer[] the calculation of the amount of the judgment of foreclosure and sale" to the undersigned but does not provide any information on how this amount should be calculated. (*See* Mot. at 1-2.) Accordingly, I respectfully recommend that the Court decline this request and instead appoint a referee to conduct the foreclosure sale and make the appropriate calculations. *E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308 (ADS)(SIL), 2016 WL 3365091, at *11 (E.D.N.Y. May 9, 2016) (finding "courts routinely appoint referees to effectuate the sale of foreclosed properties"), *R&R adopted sub nom. E. Sav. Bank v. Robinson*, 2016 WL 3102021 (E.D.N.Y. June 2, 2016). Plaintiff should be directed to provide the name of a proposed referee whom the Court shall appoint. *See, e.g.*, *Miss Jones*, 2018 WL 2074205, at *1 (directing plaintiff to provide list of prospective referees to be appointed to effectuate foreclosure and sale of the property).

### CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted in part. I recommend that judgments of mortgage foreclosure and security interest foreclosure be entered

---

[8] Plaintiff does not seek default judgment against Defendants New York City Department of Finance and New York State Department of Taxation and Finance, even though default was entered against them. (*See* Dkt. 31.) Because Plaintiff does not allege with particularity the nature of these Defendants' interests in the Property (*see* Am. Compl. ¶¶ 8-9), I respectfully recommend that they be dismissed from the case. *See, e.g.*, RPAPL § 202-a; *JXB 84 LLC v. Khalil*, No. 15-CV-6251 (NGG)(JO), 2017 WL 1184001, at *4 (E.D.N.Y. Feb. 17, 2017) ("Without 'detailed facts showing the particular nature of the interest in or lien on the real property[,]' the conclusory allegations of the Amended Complaint do not establish a claim against the [defendant] under New York law." (quoting RPAPL § 202-a)), *R&R adopted*, 2017 WL 1184141 (E.D.N.Y. Mar. 29, 2017).

15

against 358 Atlantic Realty LLC and Mobrownstone Realty LLC, but not Defendant Mohamed. I recommend that Plaintiff's request that judgment be entered on its third cause of action for possession be denied. I further respectfully recommend that Plaintiff's request that I be referred the calculation of the amount of the judgment of foreclosure and sale be denied, but that Plaintiff instead be directed to provide the name of a referee whom the Court shall appoint to effectuate the foreclosure and sale of the Property and Collateral, and also to calculate the amounts, if any, that remain owing after the sale.

Plaintiff is directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by March 6, 2023. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any just objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
March 1, 2023

16